**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>Kathrine Douglas</u>

     v.                           Civil No. 15-cv-378-PB
                                      Opinion No. 2016 DNH 176
<u>US Social Security Administration,</u>
<u>Acting Commissioner, Carolyn W. Colvin</u>


<u>**MEMORANDUM AND ORDER**</u>


Kathrine Douglas is a thirty-nine year old woman who previously worked as a cashier and a companion.  Douglas challenges the Social Security Administration's denial of her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").  The Social Security Commissioner seeks to have the rulings affirmed.


**I.  <u>BACKGROUND</u>**

In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (Doc. No. 14).  Because that joint statement is part of the court's record, I do not recount it here.  I discuss facts relevant to the disposition of this matter as necessary below.

## II.   **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), I have the authority to review the administrative record and the pleadings submitted by the parties, and to enter judgment affirming, modifying, or reversing the final decision of the Commissioner.  That review is limited, however, "to determining whether the [Administrative Law Judge] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the Administrative Law Judge's (ALJ's) findings of fact, so long as those findings are supported by substantial evidence.  Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion." Id. at 770.  Findings are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st

2

Cir. 1999) (per curiam).  The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record.  Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III.  ANALYSIS

Douglas applied for DIB and SSI in March 2009, alleging disability as of July 2007.  Doc. No. 14 at 1.  She later amended her alleged onset date to January 1, 2010.  Id. Douglas's applications were denied in September 2011.  Id. After an appeal to this court, Douglas's case was remanded for further proceedings.  Id.

An administrative law judge ("ALJ") held another hearing in June 2014, at which Douglas further amended her alleged onset date to January 1, 2011.  Id.  At that hearing, a vocational expert and Douglas, represented by counsel, both testified.  Tr. at 1025-52 (hearing transcript).  The ALJ then issued a written decision in August 2014, concluding that Douglas was not disabled.  Tr. at 1001-16.

The ALJ evaluated Douglas's claims under the five-step sequential process outlined in 20 C.F.R. §§ 404.1520(a) and 416.920(a).  At step one, the ALJ found that Douglas had not

engaged in substantial gainful employment since January 1, 2011, her amended alleged onset date.  Tr. at 1004.  The ALJ determined at step two that Douglas had severe impairments of obesity and degenerative disc disease of the lumbar spine.  Tr. at 1005.  At step three, the ALJ found that Douglas's impairments did not meet or medically equal any of the listed impairments.  Tr. at 1009.  Then, after calculating Douglas's residual functional capacity ("RFC"), the ALJ concluded at step four that Douglas was able to perform her past work as a cashier and companion.  Tr. at 1015.  In the alternative, the ALJ determined at step five that Douglas could perform jobs that exist in significant numbers in the national economy.  Tr. at 1015.  The ALJ therefore found that Douglas was not disabled. Tr. at 1016.

In July 2015, the Appeals Council denied Douglas's request to review the ALJ's decision.  Tr. at 985-88.  As such, the ALJ's decision constitutes the Commissioner's final decision, and this matter is now ripe for judicial review.

Here, Douglas argues that a remand is required for two principal reasons: (1) the ALJ erred in determining Douglas's residual functional capacity, and (2) the ALJ improperly relied on certain vocational expert testimony.  I address each issue in turn.

4

A.    **Residual Functional Capacity Arguments**

Douglas contends that the ALJ erred in assessing her RFC.
A claimant's RFC is "the most [the claimant] can still do
despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1),
416.945(a)(1).  The ALJ must assess a claimant's RFC "based on
all of the relevant medical and other evidence."  See 20 C.F.R.
§§ 404.1545(a)(3), 416.945(a)(3).  On appeal, I determine
whether the assigned RFC is supported by substantial evidence.
Irlanda Ortiz, 955 F.2d at 769.

In this case, the ALJ found that Douglas has the RFC "to
perform light work as defined in 20 CFR 404.1567(b) and
416.967(b) except she could occasionally climb, balance, stoop,
kneel crouch or crawl."[1]  Tr. at 1010.  In formulating the RFC,
the ALJ recognized Douglas's severe impairments of obesity and
degenerative disk disease.  Tr. at 1011.  He also noted "EMG
testing that showed evidence of lumbar radiculopathy."  Tr. at
1011.  The ALJ concluded that "[a]lthough [Douglas] subjectively
alleges significant symptoms and work-related functional

---

[1] "Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to
10 pounds.  Even though the weight lifted may be very little, a
job is in this category when it requires a good deal of walking
or standing, or when it involves sitting most of the time with
some pushing and pulling of arm or leg controls." 20 C.F.R. §§
404.1567(b), 416.967(b).

limitations from her combination of impairments, the record as a
whole fails to support her alleged limitations as described."
Tr. at 1011.  In particular, Douglas's treatment history and the
"limited objective scans or testing" on record did not support
the alleged limitations.  See Tr. at 1011-12.  The ALJ further
described evidence adversely affecting Douglas's credibility.
Tr. at 1012-13.

The ALJ did not include any non-exertional limitations in
the RFC.  Tr. at 1010.  In his step two analysis, the ALJ
discussed Douglas's subjective reports of depression, manic
symptoms, anxiety, and obsessive compulsive disorder.  Tr. at
1005.  After overviewing Douglas's "objective clinical
presentation" and evaluating several opinions on her mental
health, the ALJ concluded that "[Douglas's] mental health
conditions do not more than minimally affect [her] ability to
engage in substantial gainful activity."  Tr. at 1007-1008.  The
RFC assessment contains two additional references to opinions on
Douglas's mental health.  Tr. at 1013-14.  Douglas challenges
the ALJ's RFC assessment on several grounds.

1.  Reliance on Dr. Jaffe's Opinion

Douglas first argues that the ALJ erred by relying on the
opinion of Dr. Jonathan Jaffe.  See Doc. No. 10-1 at 5-6.  Dr.
Jaffe, a state medical consultant, prepared a "Physical [RFC]

6

Assessment" of Douglas in May 2009.  <u>See</u> Tr. at 578, 585, 1013.
In relevant part, Dr. Jaffe opined that Douglas could
occasionally lift 20 pounds, could frequently lift 10 pounds,
and could stand or walk for "about 6 hours in an 8-hour
workday."  Tr. at 579.  Dr. Jaffe limited Douglas to only
occasionally climbing, balancing, stooping, kneeling, crouching
and crawling.  Tr. at 580.

Douglas provides two reasons why the ALJ's reliance on Dr.
Jaffe's opinion was erroneous.  First, she points to the ALJ's
statement in his decision that only evidence that is dated
within 12 months of a claimant's alleged onset date is material
to a DIB claim and argues that the ALJ failed to act
consistently with this statement by considering Dr. Jaffe's
opinion because the opinion predated Douglas's amended onset
date by approximately 1-1/2 years.  <u>See</u> Doc. No. 10-1 at 5.
Second, she argues that the ALJ should not have relied on Dr.
Jaffe's opinion because it fails to account for subsequent
medical evidence that bears on Douglas's RFC.  <u>See</u> <u>id.</u> at 5-6.
I address each argument in turn.

  **a.   Materiality**

Douglas's first argument fails because it is based on the
mistaken premise that an ALJ may not consider medical evidence

7

that predates a claimant's onset date by more than a year.  The
ALJ based his statement to this effect on the Social Security
Administration's Hearings, Appeals, and Litigation Law Manual
("HALLEX").  See Tr. at 1001.

HALLEX I-2-6-58 (A), the section the ALJ referenced in this
case, provides that an ALJ "will generally admit into the record
any information he or she determines is material."  HALLEX I-2-
6-58 (A).  "Information is material if it is relevant, i.e.,
involves or is directly related to issues being adjudicated."
Id.  After defining materiality, HALLEX lists "examples of
information that may be material," including "[e]vidence dated
within 12 months of the alleged onset date under" a DIB claim
and "[e]vidence dated on or after the application date" of a SSI
claim.  Id.

The ALJ misread HALLEX I-2-6-58 (A) because, by its own
terms, it merely offers examples of evidence that may be
considered material without categorically determining evidence
to be immaterial simply because it does not fit within a listed
example.  Because HALLEX 1-2-6-58 (A) does not bar the ALJ from
considering Dr. Jaffe's opinion, the ALJ did not err in relying
on the opinion even though it predated Douglas's alleged onset

8

date by more than a year.[2]

### b.  Impairments arising after Dr. Jaffe's opinion

Douglas next claims that the ALJ erred in relying on Dr. Jaffe's opinion because it did not account for impairments that arose or were diagnosed after he issued the opinion.  See Doc. No. 10-1 at 5-6.  Douglas apparently alleges that Dr. Jaffe did not consider Douglas's plantar fasciitis, right trochanteric bursitis, degenerative disc disease, or radiculopathy.  See id. at 5-6, 8.  The record also includes x-rays, EMG testing, and an MRI performed and interpreted after Dr. Jaffe produced his opinion.  See Id. at 6-8; Tr. at 865, 920, 923.

In February 2011, Dr. Jonathan Warach opined that an "electrophysiologic test of the lower left extremity reveal[ed] evidence of lumbar radiculopathy or polyradiculopathy most prominently affecting the L5 and S1 segments."  Tr. at 803.  In June 2011, Dr. Peter Dirksmeier reviewed contemporaneous x-rays

---

[2] Douglas also faults the ALJ for relying on Dr. Jaffe's opinion while at the same time refusing to credit other information favorable to her on the ground that it was "remote."
The ALJ, however, did not deem the "remote" evidence to be immaterial and thus he did not violate HALLEX 1-2-6-58 (A). Determining the weight that should be given to evidence included in the record is a different matter that is committed to the discretion of the ALJ.  The ALJ did not abuse that discretion merely by deciding to credit Dr. Jaffe's opinion while discounting other evidence because it was remote.

of Douglas's "lumbrosacral spine" and saw "what appear[ed] to be disc space narrowing at L5-S1 which [was] mild." Tr. at 923. Dr. Dirksmeier also ordered an MRI. Tr. at 923. After reviewing the MRI, Dr. Dirksmeier diagnosed Douglas with "symptomatic degenerative disc disease and secondary radiculitis and trochanteric bursitis." Tr. at 920. Dr. Dirksmeier did not "recommend medicinal management or interventional pain procedures," but instead "significant weight loss . . . that would require exercise on a regular basis." Tr. at 920-921. He suggested physical therapy or a gym membership. See Tr. at 920-921.

Where a reviewing consultant bases his or her opinion on a "significantly incomplete record," the ALJ may not give that opinion "any significant weight." See Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007) (per curiam) (unpublished); see also Padilla v. Barnhart, 186 F. App'x 19, 22 (1st Cir. 2006) (per curiam) (unpublished); Bell v. Astrue, 2012 DNH 010, 21. However, the above rule is not absolute. As the Court noted in Ferland v. Astrue, 2011 DNH 169,

> [A]n ALJ may rely on [the opinion of a reviewing consultant] where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, [citing Strout v. Astrue, No. CIV. 08-181-B-W, 2009 WL 214576, at *8-9 (D. Me. Jan. 28, 2009), aff'd, No. CIVIL 08-181-B-W, 2009 WL 578546 (D. Me. Mar. 5, 2009), or where the medical reports of

claimant's treating providers are arguably consistent
with, or at least not "clearly inconsistent" with, the
reviewer's assessment.  See Torres v. Comm'r of Social
Security, Civil No. 04-2309, 2005 WL 2148321, at *1
(D.P.R. Sept. 6, 2005) (upholding ALJ's reliance on
RFC assessment of non-examining reviewer where medical
records of treating providers were not "in stark
disaccord" with the RFC assessment).  See also
McCuller v. Barnhart, No. 02-30771, 2003 WL 21954208,
at *4 n. 5 (5th Cir.2003) (holding ALJ did not err in
relying on non-examining source's opinion that was
based on an incomplete record where he independently
considered medical records dated after the non-
examining source's report).

Ferland, 2011 DNH 169, 11-12.

In this case, the ALJ determined that "[a]lthough
subsequent records were submitted" after Dr. Jaffe's opinion
"they do not further limit [Douglas'] physical capacities."  Tr.
at 1013.  Substantial evidence supports this conclusion.

In support of Dr. Jaffe's opinion, the ALJ noted that the
opinion was consistent with Dr. Dirksmeier's recommendation that
Douglas exercise regularly.  See Tr. at 1013.  Prior to
evaluating Dr. Jaffe's opinion, the ALJ had reasoned that "[t]he
ability to exercise regularly at a gym is generally consistent
with an ability to perform at least light work."  Tr. at 1013.
The ALJ's reasoning supports the conclusion that the impairments
diagnosed by Dr. Dirksmeier do not "establish any greater
[functional] limitations" than those recognized in Dr. Jaffe's
opinion.  See Ferland, 2011 DNH 169, 11.  Dr. Jaffe assigned

11

Douglas an RFC allowing for light work.  See Tr. at 579-580.

    The ALJ may permissibly make the inference that regular exercise at a gym is consistent with light work.  "[A]lthough an ALJ cannot <u>ab initio</u> interpret medical records to determine a claimant's RFC, he can 'render[] common-sense judgments about functional capacity based on medical findings.'"  <u>Delafontaine v. Astrue</u>, 2011 DNH 005, 26 (quoting <u>Gordils v. Sec'y of Health & Human Servs.,</u> <u>921 F.2d 327, 329 (1st Cir. 1990)</u>).  The ability to regularly exercise, like the ability to "squat and rise from a squat without difficulty, and step up and down without difficulty,"  "is not inscrutable medical terminology that require[s] an expert to interpret."  <u>See</u> <u>Guzman v. Colvin</u>, 2016 DNH 075, 8.  Inferring the capabilities required for exercise is within the ken of a layperson.

    This reveals why Douglas's reliance on <u>Bell v. Astrue</u>, 2012 DNH 010, is misplaced.  <u>See</u> Doc. No. 10-1 at 6, 8.  In <u>Bell</u>, several MRIs postdated the opinion of a reviewing consultant. <u>Bell</u>, 2012 DNH 010 at 23.  I ruled that the ALJ "improperly concluded that [the consultant's] opinion provided significant evidence of Bell's current physical capabilities by interpreting subsequent raw medical data as consistent with that opinion." <u>Id.</u>  Douglas argues that something similar happened here.  <u>See</u> Doc. No. 10-1 at 8.  In the present case, however, the ALJ did

not just discuss MRIs.  He drew commonsense inferences based on Douglas's treatment.  See Tr. at 1013 (citing recommendation of exercise and "limited use of medication" as support for Dr. Jaffe's opinion); cf. Moore v. Astrue, No. 1:09-CV-825, 2011 WL 1398480, at *4 (S.D. Ohio Apr. 13, 2011) ("treatment approach was conservative, in the main prescribing medication and physical therapy, which suggests that [claimant's] back condition is not substantially limiting").

The ALJ also permissibly discounted opinions unfavorable to his conclusion but made with the benefit of the MRI.  See Bell, 2012 DNH 010, 25 (instead of ignoring evidence, "[t]he ALJ could have discounted evidence showing that [claimant's] condition was more severe than what the cited evidence indicated"); Johnson v. Comm'r, Soc. Sec. Admin., No. 13-CV-525-JL, 2015 WL 1119977, at *6 (D.N.H. Mar. 12, 2015) (where ALJ discounted opinions, "it was likewise appropriate for the ALJ to rely on the opinions of a state agency consultant that 'failed' to take those unsupported opinions into account").

2.  Other Opinion Evidence

Douglas next asserts that the ALJ erred by not addressing three medical opinions: (1) the collected opinions of advanced practice registered nurse ("APRN") Amanda Wood-Friend; (2) the opinion of Dr. Peter Bradley included in Douglas's application

13

for state aid; and (3) the December 2011 opinion of treating psychologist Dr. Jonathan Wagner.  <u>See</u> Doc. No. 10-1 at 8-10. Douglas's arguments are ultimately meritless.

The ALJ must "consider" all medical opinions of record, along with all relevant evidence received.  20 C.F.R. §§ 404.1527(b), 416.927(b).  The ALJ must also "evaluate every medical opinion."  §§ 404.1527(c), 416.927(c).  Where the ALJ discounts a treating source's opinion, the ALJ must address the opinion.  §§ 404.1527(c)(2), 416.927(c)(2).  Further, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996).

"Medical sources" include "acceptable medical sources, [and] other health care providers who are not acceptable medical sources."  <u>See</u> §§ 404.1502, 416.902; SSR 06-03P, 2006 WL 2329939, at *1 (August 9, 2006).  "Licensed physicians" and "[l]icensed or certified psychologists" are "acceptable medical sources," whereas nurse-practitioners are not "acceptable medical sources."  §§ 404.1513(a), (d), 416.902(a), (d); SSR 06-03P, 2006 WL 2329939, at *1-2.  "[T]he adjudicator generally should explain the weight given to opinions from [sources that

14

are not acceptable medical sources] or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  Id. at *6.

Douglas first claims that the ALJ committed error by not addressing the opinions of APRN Wood-Friend.  I find no error. APRN Wood-Friend authored at least six "Physician/Clinician Statement[s] of Capabilities" from 2008 to 2010.  Tr. at 694-97, 722-725, 772-775, 777-80, 781-84, 786-789.  The statements were checkbox forms, and each indicated that Douglas was incapable "of participating in work-related activities at this time."  Tr. at 694-97, 722-725, 772-775, 777-80, 781-84, 786-789.  In 2011, APRN Wood-Friend also concurred with a July 2010 "functional capacity evaluation" performed by another source.  Tr. 951-56. The ALJ mentioned only the 2011 concurrence, which he dismissed because APRN Amanda Wood-Friend "is not an acceptable medical source."  Tr. at 1014.

Although it would have been preferable for the ALJ to have discussed APRN Wood-Friend's statements and concurrence, I decline to remand on this ground.  Douglas did treat with APRN Wood-Friend frequently and over a substantial period of time. Nevertheless, because APRN Wood-Friend's statements and

15

concurrence are conclusory, and even internally inconsistent at
times, the ALJ's failure to discuss them "was harmless because
the check-box form[s] [were] so patently deficient that the
Commissioner could not possibly credit [them]."  See Denham v.
Comm'r of Soc. Sec., No. 2:15-CV-2425, 2016 WL 4500713, at *3
(S.D. Ohio Aug. 29, 2016) (citing Wilson v. Comm'r of Soc. Sec.,
378 F.3d 541, 547 (6th Cir. 2004)).

Douglas's next claim of error involves a 2012 "physical RFC
worksheet" allegedly completed by Dr. Peter Bradley  in
connection with Douglas's application for New Hampshire Aid to
the Permanently and Totally Disabled ("APTD").  See Doc. No. 10-
1 at 9.  Douglas complains that "[t]he ALJ did not mention this
opinion and instead grouped all the evidence for APTD together."
See id.  I am unpersuaded by this argument.  Although the ALJ
did not specifically discuss the work sheet, he did consider the
APTD application as a whole.  This was not reversible error.

Last, Douglas argues that the ALJ ignored a December 2011
opinion from treating psychologist Jeffrey Wagner, Ph.D.
Although the ALJ did not specifically reference the December
2011 opinion in his decision, he did explain why he assigned
little weight to Dr. Wagner's other opinions.  Because Dr.
Wagner's December 2011 opinion does not differ materially from
his earlier opinions and, as I explain below, the ALJ

16

supportably determined that Dr. Wagner's other opinions were entitled to little weight under these circumstances, the ALJ did not commit reversible error in failing to discuss Dr. Wagner's December 2011 opinion.

   3.   Treatment of Dr. Wagner's Opinions

      Douglas next contends that the ALJ improperly discounted Dr. Wagner's other opinions that bear on her RFC.  See Doc. No. 10-1 at 9-13.  Douglas's claim fails.  A treating source's opinion is entitled to controlling weight so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Even if a treating source's opinion deserves less than controlling weight, it may be "entitled to deference."  SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996).

      To determine how much weight a treating source's opinion should receive, the ALJ must consider the "length of the treatment relationship," the "nature and extent of the treatment relationship," the opinion's supportability and consistency with the record as a whole, the treating source's area of specialization, if any, and any other relevant factors.  See 20 C.F.R. §§ 404.1527(c), 416.927(c).  Where the ALJ discounts a treating source's opinion, the ALJ is required to provide "good

reasons" for doing so.  20 C.F.R. §§ 404.1527(c)(2),
416.927(c)(2).  The ALJ's decision must be "supported by the
evidence in the case record, and . . . sufficiently specific to
make clear . . . the weight [the ALJ] gave to the treating
source's medical opinion and the reasons for that weight."  SSR
96-2p, 1996 WL 374188, at *5; see also Jenness v. Colvin, 2015
DNH 167, 15 ("To meet the 'good reasons' requirement, the ALJ's
reasons must be both specific and supportable."  (internal
citations and punctuation omitted)).

> a.   **August 2011 opinion**

Douglas appears to take issue primarily with the ALJ's
rejection of Dr. Wagner's August 2011 opinion.  See Doc. No. 10-
1 at 11.  In the August 2011 opinion, labelled a "treatment
update," Dr. Wagner first recounts Douglas's description of how
pain interferes with her daily life and then offers two
"model[s] of pain management."  See Tr. at 984.  In assigning
"limited weight" to this opinion, the ALJ explained that "[Dr.
Wagner's] notes are brief, with no mental status examination,
and no functional analysis to support a conclusion of inability
to engage in any substantial gainful activity.  He also noted
that Dr. Wagner "confuse[d] reports of limitations from physical
pain, the province of a medical provider, with limitation from
psychological issues."  Tr. at 1013.

The ALJ's decision to discount Dr. Wagner's August 2011 opinion was both "supported by the evidence in the case record" and "sufficiently specific."  The ALJ supportably described the August 2011 opinion, and provided specific reasons for discounting it.  An ALJ may permissibly consider the depth of analysis in an opinion, and whether objective evidence or observation supports the opinion.  See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); Gregoire v. Colvin, 2015 DNH 035, 6-7 (lack of objective evidence suggests reliance on "subjective complaints," which is grounds for "reject[ing] the opinion of a treating physician").  Additionally, given that "the ALJ [is] simply not qualified to interpret raw medical data in functional terms," Nguyen, 172 F.3d at 35, an ALJ may permissibly conclude that an opinion lacking functional analysis is of limited utility in determining a claimant's RFC.

### b.   July 2011 opinion

Douglas also describes Dr. Wagner's July 2011 opinion, but does not specifically contest the ALJ's decision to discount it. See Doc. No. 10-1 at 11-13.  The July 2011 opinion provides a

19

much more detailed functional analysis of Douglas's mental impairments than the August 2011 opinion, see Tr. at 856-863, and elicited a more detailed rejection from the ALJ, Tr. at 1007.  Directing the thrust of Douglas's argument at the ALJ's reasons for giving "very little weight" to the July 2011 opinion still does not ultimately reveal reversible error.

In his July 2011 opinion, identified as a "Mental Impairment Medical Source Statement (RFC & Listings)," Dr. Wagner drew a number of functional conclusions, including that Douglas was "unable to meet competitive standards" with respect to five "mental abilities and aptitudes needed to do unskilled work," four "mental abilities and aptitudes needed to do semiskilled and skilled work," and one "mental abilit[y] [or] aptitude[] needed to do particular types of jobs."  Tr. at 856-60 (capitalization altered).  Dr. Wagner further determined that Douglas had "[m]arked" "restriction of activities of daily living" and "marked" "difficulties in maintaining social functioning" and "concentration, persistence or pace."  Tr. at 861.

The ALJ provided four interconnected reasons for giving "very little weight" to Dr. Wagner's July 2011 opinion: (1) the limitations identified by Dr. Wagner "are inconsistent with the medical record of evidence;" (2) the limitations "are not

20

supported by [Dr. Wagner's] own cursory treatment notes" which further contained "no mention of manic syndrome, autonomic hyperactivity, sleep disturbance, or recurrent obsessions;" (3) "[Dr. Wagner] only saw [Douglas] on two occasions, for one hour each time;" and (4) "[Douglas] has a history of symptom magnification or exaggeration, which may explain why she makes significant complaints of anxiety, depression, and agitation yet displays no such signs on objective examination."  Tr. at 1007.

Although this is a close question, the ALJ has given reasons "sufficiently specific" and "supported by the evidence in the case record."  See SSR 96-2p, 1996 WL 374188, at *5.  The ALJ's first reason for rejecting Dr. Wagner's July 2011 opinion, that the opinion is "inconsistent with the medical record of evidence," Tr. at 1007, is generally a "good reason" if adequately clear and supported.  See, e.g., Couture v. Colvin, 2015 DNH 128, 7-8 (accepting ALJ's decision to discount treating physician's opinion, which decision was based, in part, on conflicting medical opinions); Figueroa v. Astrue, 2012 DNH 101, 15-16 (finding "good reasons" where ALJ discounted a treating physician opinion on the basis of a conflicting opinion and treating physician's notes); Walter v. Colvin, No. 15-CV-194-LM, 2016 WL 659721, at *8-9 (D.N.H. Feb. 18, 2016) (finding no error where ALJ discounted an apparently treating physician's opinion

because of, inter alia, inconsistency between the opinion and "medical records show[ing] cooperative behavior with good grooming and pleasant behavior").

The ALJ cited the evidence in his decision to support his conclusion that Dr. Wagner's July 2011 opinion was "inconsistent with the medical record of evidence." Tr. at 1007. The ALJ's citation constitutes a "sufficiently specific" direction to at least two pieces of evidence. First, an overview of "[Douglas'] objective clinical presentation" from 2011 through 2014, located on the same page as the ALJ's rejection of Dr. Wagner's July 2011 opinion. Tr. at 1007. Second, the June 2010 opinion of Dr. Paul Friedrichs, also discussed on the same page. Tr. at 1007. These two pieces of evidence represent substantial evidence for the ALJ's first justification for rejecting the July 2011 opinion of Dr. Wagner.

The ALJ's overview of clinical observations supports his determination that "[o]verall, this review of [Douglas'] objective clinical presentation in treatment is quite mild and fails to support [non-extertional limitations]." Tr. at 1007. The ALJ cites to record evidence in favor of his conclusion, for example noting that "[i]n June 2011, [Douglas] presented with no depression, anxiety, or agitation," Tr. at 1007 (citing Tr. at 939), and that in "May 2013, she presented with appropriate

speech, normal thought processes, intact associations, no
psychotic determinants, good insight and judgment, good recent
and remote memory, and well-modulated affect" and received a
Global Assessment of Functioning ("GAF") score of 60, Tr. at
1007 (citing Tr. at 1789).

The opinion of Dr. Friedrichs also supports the ALJ's
rejection of Dr. Wagner's July 2011 opinion.  The ALJ assigned
"significant weight" to "the opinion of treating physician P.
Friedrichs, M.D."  Tr. at 1007.  In the June 2010 opinion,
labeled a "Medical Source Statement of Ability To Do Work-
Related Activities (Mental)," Dr. Friedrichs checked boxes
indicating that Douglas's impairments had no effect on her
"ability to understand, remember, and carry out instructions,"
nor her "ability to interact appropriately with supervision, co-
workers, and the public, as well as respond to changes in the
routine work setting."  Tr. at 609-610 (capitalization altered).

Dr. Friedrichs's conclusions stand in stark contrast to Dr.
Wagner's.  Where medical opinions conflict, the ALJ must weigh
several factors to determine which opinion to credit.  See 20
C.F.R. § 404.1527(c); Guzman, 2016 DNH 075, 15.  The ALJ decided
to credit Dr. Friedrichs's opinion because "[Dr. Friedrichs] was
[Douglas'] primary treating source as of the time of his
assessment . . . [and] I find [his] opinion reasonable,

supported by [Douglas'] erratic treatment history and consistently mild objective clinical presentation, and supported in light of the inconsistencies in [Douglas'] testimony concerning her alleged symptoms." Tr. at 1007. Here, the ALJ did not err in crediting Dr. Friedrichs's opinion. See Couture, 2015 DNH 128 at 7-8 (ruling that conflict among medical opinions supported ALJ's decision to discount treating physician's opinion).

The second reason cited by the ALJ for giving "very little weight" to Dr. Wagner's July 2011 opinion is that the opinion is "not supported by [Dr. Wagner's] own cursory treatment notes." Tr. at 1007. This reason qualifies as a "good reason" if adequately supported. See Brown v. Colvin, No. 14-CV-256-JL, 2015 WL 4416971, at *4 (D.N.H. July 17, 2015) (ruling ALJ permissibly discounted opinion where, inter alia, it was inconsistent with treatment note); Marshall v. Colvin, 2014 DNH 180, 43-44 (implying treatment notes based primarily on "subjective reports" may not substantiate opinion). There is adequate support here.

The ALJ cites to three treatment notes in his discussion of the July 2011 opinion, including the two notes dated prior to the opinion. Tr. at 1007 (citing Tr. at 854-55, 864). Citations elsewhere in the opinion indicate that the ALJ

24

considered five other treatment notes from Dr. Wagner.  See Tr. at 1007, 1013.  The ALJ could permissibly infer that these treatment notes largely contain Douglas's reports, as opposed to objective observation or examination.  It is not error for the ALJ to discredit an opinion on that ground.  See Gregoire, 2015 DNH 035, 6-7; Marshall, 2014 DNH 180, 43-44.

Third, the ALJ faults Dr. Wagner's July 2011 opinion for being based on two, one-hour meetings with Douglas.  Tr. at 1007.  Length of treatment and frequency of examination are indeed legitimate grounds for evaluating a medical opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  In this instance, however, the ALJ failed to discuss Dr. Wagner's December 2011 opinion, which was based on three additional meetings with Douglas.  See Tr. at 1076-1078 (treatment notes corresponding to visits).  Nor did the ALJ explicitly take into account the four visits that occurred after Dr. Wagner's December 2011 opinion.  Id. at 1536-37.  There is no indication that Dr. Wagner materially changed his opinion after the additional visits in 2011 or 2012.  Cf. Jenness, 2015 DNH 167 at 17-18 (finding error where ALJ criticized a treating source's "reliance upon [claimant's] subjective reports without also noting" a later opinion that reached the same conclusions with the benefit of objective examination).  The ALJ's appeal to the length or frequency of

25

treatment thus does not qualify in this case as a "good
reason[]" for rejecting Dr. Wagner's July 2011 opinion.  See SSR
96-2p, 1996 WL 374188, at *5.

Fourth and last, the ALJ offers Douglas's alleged "history
of symptom magnification or exaggeration" as a reason for
discounting Dr. Wagner's July 2011 opinion.  Tr. at 1007.
Several pages later, the ALJ substantiates this claim with
evidence that casts doubt on Douglas's credibility, including:
(1) a June 2011 consultation "where [Douglas] was noted to
exhibit a slightly awkward limp . . . [that] was noted to
improve when walking out" and "[Douglas] was noted to exhibit
exaggerated withdrawal to even light touch, but then exhibited
normal passive range of motion," Tr. at 1012 (citing Tr. at 922-
23); and (2) Douglas claiming "self-employment" on a disability
application dated after September 2011, but "den[ying] any such
work" at the hearing, Tr. at 1012 (citing Tr. 1392, 1029-30).[3]
An adequately supported claim of exaggeration can constitute or
complement a "good reason" for rejecting a treating source's
opinion.  Cf. Moore, 2011 WL 1398480, at *5-6  (finding no error

---

[3] The ALJ cites to an Appeals Council order that notes Douglas's
earnings in 2010 and "subsequent applications" describing self-
employment that ended in July 2010.  Tr. at 1392.  At the 2014
hearing, Douglas denied working in 2010.  Tr. at 1029-30.

where ALJ discounted treating psychiatrist opinion, in part "because it was based largely on [claimant's] self-reported symptoms" and claimant had a history of drug-seeking behavior). The ALJ adequately supported his conclusion here.

In summary, the ALJ had multiple good reasons for assigning little weight to Dr. Wagner's opinion.  Under these circumstances, the mere fact that Dr. Wagner saw Douglas on more occasions than the ALJ's decision acknowledges does not undermine my conclusion that substantial evidence supports the ALJ's decision to discount Dr. Wagner's opinions.[4]

---

[4] Douglas also faults the ALJ for not considering the limitations reflected in examining psychologist Eric Niler's opinion in combination with the limitations recognized in Dr. Friedrichs's and Dr. Wagner's opinions.  See Doc. No. 10-1 at 15.  Dr. Niler examined Douglas in March 2012 and prepared a "psychiatric evaluation."  Tr. at 1258, 1260 (capitalization altered).  In pertinent part, he determined that Douglas had suffered a "moderate" functional loss in "social interactions" because "[s]he stated that she no longer spends time with her friends."  See Tr. at 1259 (capitalization altered).  He further opined that Douglas would "seldom" have a functional loss in "concentration, persistence, [or] pace" at work.  See Tr. at 1259 (capitalization altered).  Dr. Niler ultimately concluded that Douglas's "mental health issues, in and of themselves, are [not] preventing her from working."  Tr. at 1260.  Even though the ALJ did not explicitly evaluate Dr. Niler's opinion, he was clearly aware of it.  See Tr. at 1006, 1014 (describing the opinion at step two and referencing it in the RFC assessment).  Further, Dr. Wagner found an even greater limitation than Dr. Niler, see Tr. at 861 (noting "[m]arked]" "[d]ifficulties in maintaining social functioning"), and the ALJ permissibly discounted Dr. Wagner's opinion.  For largely similar reasons, the ALJ could have permissibly discounted the limitation in Dr. Niler's opinion.  To the extent Dr. Niler's or Wagner's opinions

4.   Consideration of All Impairments

   a.  **Step two severity analysis**

Douglas argues that the ALJ erred in "f[inding] no severe mental health impairments" at step two of the ALJ's sequential analysis.  See Doc. No. 10-1 at 14.  The ALJ did find some physical impairments—"obesity and degenerative disc disease of the lumbar spine"—but concluded that "[Douglas's] medically determinable mental impairments, considered singly and in combination, do not cause more than minimal limitation . . . and are therefore non-severe."  Tr. at 1005.

Douglas's argument cannot succeed because "[t]his court has consistently held [] that an error in describing a given impairment as non-severe is harmless so long as the ALJ found at least one severe impairment and progressed to the next step of the sequential evaluation."  Chabot v. Acting Comm'r of Soc. Sec., 2014 DNH 067, 23-24 (citing Hines v. Astrue, No. 11-CV-184-PB, 2012 WL 1394396, at *12-13 (D.N.H. Mar. 26, 2012); Lawton v. Astrue, No. 11-CV-189-JD, 2012 WL 3019954, at *7

---

conflicted with the opinion of Dr. Friedrichs, it was a conflict for the ALJ to resolve.  See Irlanda Ortiz, 955 F.2d at 769. Though Dr. Friedrichs only opined on Douglas's ability to interact socially in the workplace, as opposed to her general "social interactions" or "social functioning," see Tr. at 610, it is permissible for an ALJ to focus on a claimant's functioning in the workplace.  I find no grounds for remand.

(D.N.H. July 24, 2012).  At step two, the ALJ found that Douglas
had two impairments, and he "progressed to the next step of the
sequential evaluation."  See Chabot, 2014 DNH 067, 23.
Accordingly, I find no grounds for remand at step two.

**b.  RFC analysis**

Douglas makes three additional arguments related to the
ALJ's formulation of Douglas's RFC.  First, she argues that the
ALJ erroneously "did not consider [Douglas'] mental health
impairments in combination" in calculating her RFC.  See Doc.
No. 10-1 at 14.  Douglas claims that the functional limitations
in Dr. Friedrichs's June 2010 opinion and Dr. Wagner's opinions
should have been considered in combination.  See id. at 15.
Second, the ALJ further erred by "not includ[ing] any mental
health limitations in the RFC."  See id. at 14.  Third and last,
she asserts that the ALJ committed error when he "failed to
consider the limiting effects from [Douglas'] radiculopathy
symptoms" and did not "account" for those symptoms in the RFC.
See id. at 15.

In assessing whether a claimant is disabled, an ALJ must
consider "the combined effect of all of a claimant's
impairments," regardless of whether those impairments are
classified as "severe."  McDonald v. Sec'y Health & Human
Servs., 795 F.2d 1118, 1126-27 (1st Cir. 1986); see 42 U.S.C. §

423(d)(2)(B); 20 C.F.R. §§ 404.1523, 416.923.  It is "simply a
matter of common sense that various physical, mental, and
psychological defects, each nonsevere in and of itself, might in
combination, in some cases, make it impossible for a claimant to
work." McDonald, 795 F.2d at 1127.  An ALJ must therefore
"consider the combined effect of all of [a claimant's]
impairments without regard to whether any such impairment, if
considered separately, would be of sufficient severity." 20
C.F.R. 404.1523; see SSR 96-8P, 1996 WL 374184, at *5 (July 2,
1996).

      Nonetheless, an ALJ has "considerable latitude in how" he
considers non-severe impairments in calculating a claimant's
RFC.  See Chabot, 2014 DNH 067, 25.  Generally, merely
mentioning a non-severe impairment is sufficient to show
consideration.  See Hines, 2012 WL 1394396, at *13, ("[T]he ALJ
noted the medical evidence of [claimaint's] fibromyalgia in his
decision.  Thus, there is evidence in the record to suggest that
the ALJ did consider [claimant's] fibromyalgia when he
determined her RFC, and nothing to suggest that he did not."
(citation omitted)), report and recommendation adopted sub nom.,
Hines v. U.S. Soc. Sec. Comm'r, No. 11-CV-184-PB, 2012 WL
1393063 (D.N.H. Apr. 20, 2012); Baker v. Astrue, No. 10-CV-454-
SM, 2011 WL 6937505, at *9 (D.N.H. Nov. 15, 2011) ("ALJ noted

30

the medical evidence of Baker's shoulder condition in his
decision and also acknowledged her complaints of shoulder
pain."), report and recommendation adopted, No. 10-CV-454-SM,
2012 WL 10284 (D.N.H. Jan. 3, 2012).

The ALJ's decision evinces adequate consideration of
Douglas's mental impairments in forming the RFC.  At step two,
the ALJ extensively discussed Douglas's mental impairments.  He
reviewed her subjective complaints and objective presentations,
Tr. at 1005, 1007, referenced multiple mental health opinions,
Tr. at 1007-08, and considered the "paragraph B" categories used
"for evaluating mental disorders," Tr. at 1008-09.  The
extensive discussion of mental impairments at step two, along
with two mentions of mental health opinions in the RFC
assessment, satisfy the ALJ's duty to "consider the combined
effect of all of [a claimant's] impairments."  § 404.1523; see
Martel v. Comm'r of Soc. Sec., 2013 DNH 157, 32 ("ALJ properly
considered depression when making his RFC finding" by citing to
it twice at step two and "permissibly disregard[ing]" it).

Note that the ALJ did not commit the error of the ALJ in
Forni v. Barnhart, 2006 DNH 120.  In Forni, "[the ALJ]
determined that [claimant's] mental impairment was not severe
but that his asthma and carpal tunnel syndrome were severe.  He
then completely (and improperly) dropped [claimant's mental

31

impairment] from his analysis." Forni, 2006 DNH 120, 23.  The
ALJ in the present case mentioned two mental health opinions in
the RFC evaluation.  Tr. at 1013-14; see also Morse v. Colvin,
2015 DNH 055, 19 (that the ALJ evaluated all mental health
opinions in step two and all physical health opinions in its RFC
formulation "supports an inference that the ALJ believed that
opinions on [claimant's] non-severe mental impairments were
irrelevant to his analysis beyond step two").

     Douglas's remaining claims in this section do not amount to
reversible error.  First, though there is tension between the
functional conclusions of Dr. Friedrichs's June 2010 opinion and
the list of diagnoses contained therein, conflicts in the
evidence are for the ALJ to resolve.  See Irlanda Ortiz, 955
F.2d at 769.  Second, no error arises from the RFC not
reflecting the functional limitations described in Dr. Wagner's
opinions.  The ALJ gave "good reasons" for rejecting Dr.
Wagner's representative July 2011 opinion.  See 20 C.F.R. §§
404.1527(c)(2), 416.927(c)(2).  Third, with respect to Douglas's
radiculopathy, the ALJ referred to the condition in formulating
Douglas's RFC.  Tr. at 1011.  Besides noting her symptoms,
Douglas does not connect her radiculopathy to any aspect of the
RFC.  I thus find no error.

B.    **Consideration of VE Opinion Evidence**

Douglas also argues that the ALJ improperly relied upon certain vocational expert testimony in concluding that Douglas was not disabled.  See Doc. No. 10-1 at 15.  In this case, the ALJ held a hearing on September 7, 2011.  Vocational expert Howard Steinberg testified at that 2011 hearing.  See Tr. at 60-65.  After the case was remanded, however, another hearing was held on June 16, 2014.  A different vocational expert, Jack Bop, testified at that 2014 hearing.  See Tr. at 1047-1050.  But, in his August 2014 decision, the ALJ relied upon VE Steinberg's testimony from the 2011 hearing.  In particular, the ALJ stated that, "[a]t the previous hearing, the vocational expert testified that the demands of the jobs of cashier and companion would not exceed the residual functional capacity above."  Tr. at 1015.  The ALJ further relied upon VE Steinberg's 2011 testimony regarding the number of available jobs (i.e. 615,000) that Douglas could perform given her RFC.

Douglas contends that it was improper for the ALJ to rely upon VE Steinberg's 2011 testimony for two reasons.  First, according to Douglas, "the number of jobs available . . . could have reasonably changed" between 2011 and 2014.  See Doc. No. 10-1 at 16.  Second, she argues that she did not have adequate notice that the ALJ would use that 2011 testimony, or an

adequate opportunity to cross-examine VE Steinberg.  See id. at
16-17.

I need not address Douglas's first argument.  As the
Commissioner points out, the ALJ resolved this case at step
four, and only proceeded to step five in the alternative.  See
Doc. No. 13-1 at 20; Tr. at 1015.  The number of jobs in the
national economy is not relevant to the step four determination.
See 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).

Douglas's second argument is simply unpersuasive.  Douglas,
who was represented by counsel, had sufficient notice that the
ALJ might use testimony from the 2011 hearing.  The Commissioner
notes that the ALJ identified the hypothetical directed to the
VE at the 2014 hearing as "hypothetical number five."  See Doc.
No. 13-1 at 20; Tr. at 1015.  This reasonably indicates that the
ALJ viewed the second hearing as continuation of the first.
Further, it would be unusual for an ALJ to ask just one question
and then conclude the meeting, especially when Douglas knew the
ALJ had posed four hypotheticals at the 2011 hearing.  Douglas
should have realized that the ALJ was not proceeding as if the
slate had been wiped clean.

In addition to sufficient notice, Douglas had sufficient
opportunity to cross-examine the VE.  At the 2011 hearing,
Douglas had every opportunity to cross-examine the VE on his

34

opinions, particularly his opinions on past relevant work.  The record reveals no questions.  Tr. at 60-61, 65.  Likewise, Douglas could have asked the VE at the 2014 hearing about his opinions on matters testified to at the prior hearing.  Again, the record reveals no such questions.

Where there has been no change in RFC, courts have not required the ALJ to provide an opportunity to cross-examine the prior VE.  See, e.g., McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009) (unpublished) ("Since the ALJ did not change his RFC assessment after remand, the ALJ's failure to initiate new hearings or submit the vocational expert to renewed cross-examination is not prejudicial because the vocational expert's interrogatories had been entered into the record without objection from the claimant."); Wisniewski v. Comm'r of Soc. Sec., 210 F. App'x 177, 180 (3d Cir. 2006) (unpublished)(where there is no change in circumstances, "the administrative law judge could properly rely a second time on the testimony of the vocational expert"); see also Savat v. Astrue, No. CIV. A. 07-1752, 2009 WL 580429, at *6 n.10 (W.D. La. Mar. 5, 2009) ("VE testimony from a prior hearing may properly support the Commissioner's decision when, as here, the claimant had an opportunity to cross-examine the expert.").  The change in RFC on remand in this case was slight and does not entitle Douglas

to cross-examine the VE who testified at her first hearing.
Compare Tr. at 1010 with Tr. at 30.

Last, fairness does not require further cross-examination.
Douglas had two opportunities to cross-examine, and one
opportunity to raise this issue with ALJ.  If anything, fairness
counsels against granting additional opportunities where
previous opportunities went unused.


## IV.   CONCLUSION

For the foregoing reasons, I grant the Commissioner's
motion to affirm (Doc. No. 13) and deny Douglas's motion to
reverse (Doc. No. 10).  The clerk is directed to enter judgment
accordingly and close the case.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


September 30, 2016

cc:  Laurie Smith Young, Esq.
     Michael T. McCormack, Esq.